## Wagner's Appeal.

A petition to the Orphans' Court for the sale of land was in its terms plainly within the Act of March 29th 1833, but contained a recital that the petitioners were "desirous that the land be sold, so as to bar any estate or remainder therein * * * so that the purchaser will take an indefeasible title thereto." It was contended that this recital brought the case within the 5th section of the Act of April 18th 1853, and the proceeds of the sale retained their character as realty. *Held*, that as there were no contingent remainders or entails, such as are contemplated by the Act of 1853, the words in the above recital should be treated as mere surplusage, and a conversion took place.

March 4th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, WOODWARD, TRUNKEY and STERRETT, JJ. PAXSON, J., absent.

Appeal from the Orphans' Court of *Berks county:* Of January Term 1879, No. 223.

This was a citation on the petition of George F. Baer, administrator d. b. n. c. t. a. of Henry M. Albright, deceased, to Harriet Wagner and Henry Brobst, surviving administrators of Franklin V. Wagner, deceased, to show cause why they should not be required to pay to the petitioner one-half of $2433.33, and one-half of $9598.50, proceeds of real estate sold by order of the Orphans' Court of Berks county.

The petition sets forth, inter alia, that on the 17th of September 1853, Maria Catharine Wagner died unmarried, without issue, and leaving as her heirs, her mother, Mrs. Catharine Wagner, her brother Franklin V. Wagner, and a niece, Valeria Catharine Albright, a minor child of a deceased sister intermarried with Henry M. Albright; that said Maria Catharine Wagner died seised of an undivided third part of a messuage and lot of ground in the city of Reading, and also of an undivided third part of a tract of land and tavern-stand situate in Upper Bern township, Berks county; that upon the death of Maria Catharine Wagner, her mother Catharine Wagner took a life-estate in the said properties, with remainder in fee to Franklin V. Wagner and Valeria Catharine Albright aforesaid.

That on the 25th day of April 1856, Mrs. Catharine Wagner presented a petition to the Orphans' Court of said county, setting forth, inter alia, that she held a life-estate in the third part of the property in the city of Reading; that it was for the interest of the said Franklin V. Wagner and Valeria Catharine Albright that the same should be sold, and praying the appointment of a trustee to sell the said property under the Act of April 3d 1851, Pamph. L. 305; whereupon the court appointed Franklin V. Wagner as such trustee, who sold the same for $2433.33, and held the same in trust for the parties interested.

That on the 21st of September 1865, Franklin V. Wagner, as

[Wagner's Appeal.]

the guardian of Valeria Catharine Albright, and representing all the parties in interest, presented a petition to said court, setting forth that the rents of the property in Upper Bern township were insufficient to keep the same in repair and be productive of revenue to those interested; that the buildings were in a state of dilapidation; that it would be to the advantage of the parties interested to sell the same and re-invest the proceeds for their use; that he was desirous for himself and his ward that the property should be sold, so as to bar any estate or remainder, and give the purchaser a clear and indefeasible title; whereupon the court ordered the sale as prayed for, and that it was sold for $9598.50; that on the 24th of February 1866, the said Franklin V. Wagner was appointed trustee to invest the said sum and pay the interest to Mrs. Catharine Wagner during her life, and upon her death to divide the principal equally between himself and the said Valeria Catharine Albright.

The petition further sets forth that on the 10th of May 1866, the said Valeria Catharine Albright died, a minor, unmarried and without issue, leaving her father, the said Henry M. Albright, her sole heir; that on the 1st of September 1865, the said Franklin V. Wagner died, and the said Harriet Wagner and Henry Brobst were appointed and are still acting as his administrators; and that on the 7th of March 1868, the said Henry M. Albright died, the said George F. Baer becoming his administrator d. b. n. c. t. a., and that on the 7th of February 1875, the said Mrs. Catharine Wagner also died; whereupon the one-half of the aforesaid sums became due and payable to the legal heirs of the said Valeria Catharine Albright, whom the petition represents; and that the same have not yet been paid by the administrators of said Franklin V. Wagner, deceased. The petition therefore prays for a citation to show cause why they should not be required to pay the said sums of money to said petitioners.

The answer sets forth:

1. That the real estate, one-half of the proceeds of which is claimed by the petitioners, was devised to said Maria Catharine Wagner by the will of her father Valentine Wagner.

2. That the proceedings to convert the said real estate into money was commenced for a specific purpose, and not for the purpose of converting it into money; that the sale did not work a conversion of the estate into personalty during the life of the widow, during which it remained realty, and that as Valeria Albright died May 10th 1866, the funds, for all purposes of descent, remained real estate and descended accordingly, and

3. That Henry M. Albright is not in the present case the heir at law of the said Valeria Albright, not being of the blood of the first purchaser, and is not entitled to inherit the same, and praying that the petition be dismissed with costs.

The question in dispute was argued on the petition and answer,

[Wagner's Appeal.]

including a reference to the original proceedings under which the several sales were made.

The court, Sassaman, J., delivered the following opinion:

"In this case there is no doubt that the Penn street property was sold under the provisions of the second paragraph of the first section of the Act approved 3d April 1851. F. V. Wagner, it appears, was the guardian of Valeria C. Albright, and co-tenant with her, upon the death of his mother, Catharine Wagner, who was also grandmother of his said ward. The said Frank V. Wagner was also appointed trustee for the sale of said premises. He sold them and held the money in trust for the interest of his mother and for the said Valeria C. Albright, his said ward, upon the death of his mother.

"Under the decision in Large's Appeal, 4 P. F. Smith 383, this sale converted the land into personalty. The proceeds, for the purposes of the life-estate, retained the character of land; but on the death of the life-tenant they are to be distributed as money. The petitioner is therefore entitled to one-half of $2433.33, with the interest from the date of the death of Catharine Wagner, which, it seems, occurred on the 7th of February 1875.

"We have no doubt that the real estate in Upper Bern township was sold under the provisions of the third paragraph of the thirty-first section Act of 1832. F. V. Wagner, the guardian of said Valeria, presented his petition for an order of sale to the Orphans' Court, on the ground that the rents, issues and profits of the land were insufficient to keep the same in repair, and to the production of revenue to the parties interested, to wit, 'himself and his mother, the said Catharine Wagner,' the only parties interested besides his said ward; that the buildings were in a state of dilapidation; that it would be much to the interest of the parties interested in said real estate and to their advantage that the same should be sold; and after the same was sold, the said Catharine Wagner and Henry M. Albright, the father of Valeria, joined in a petition to the court that he, the said F. V. Wagner, should invest the money—the proceeds of the sale for the parties interested—which was accordingly done.

"Under the decisions in Pennell's Appeal, 8 Harris 515; Grider v. McClay, 11 S. & R. 224; Biggert v. Biggert, 7 Wright 563, and Dyer v. Cornell, 4 Barr 359, we are constrained to hold that money arising from the sale of land by order of the Orphans' Court, whether it belong to an infant, a feme covert, or a male of full age, is to be considered simply as money and nothing else. It cannot retain its original character for ever. It has no ear-marks by which it can be traced and distinguished from other personal estate. The necessity for a perfect conversion at some time must be apparent, and the proper time for that is when the money has vested in the party entitled to it. This view has the support of common sense, and is absolutely sustained by authority; and it matters not

8 NORRIS—20

whether the moneys of a minor have been in the hands of a guardian or any other legally constituted trustee.

"The proceeds, for the purposes of C. Wagner, may have been treated as lands, so far as her income therefrom was affected, but as the estate of Valeria C. Albright, they would be distributed as money. The petitioner is therefore entitled to one-half of $9598.50, with interest from said 7th of February 1875."

"The Act of 18th April 1853 especially provides that nothing in that act contained shall be taken to repeal or impair the authority of any Act of Assembly authorizing the sale of real estate, so that decisions under that act do not interfere with the views above expressed.

"The 3d section of Act of 8th April 1833 provides that where a person dies intestate without issue and unmarried, if either the father or mother be dead at the time of the death of the intestate, the parent surviving shall enjoy such personal estate absolutely. In this case all the other parties are dead in such order as appears upon the facts presented by the citation and answer. The administrator—the present petitioner—is the proper legal representative to whom the above several sums of money, with interest, are due and payable."

From this decree this appeal was taken by the respondents.

*Garrett B. Stevens* and *A. G. Green*, for appellants.—Under the petition for the sale of the Reading property, only so much of the proceeds of the sale was converted as was necessary to meet the specific purpose therein set forth; the rest continued to be realty: Pennell's Appeal, 8 Harris 515.

It is not clear that the second sale was held under the Act of March 29th 1832. The petition sets forth that "they" (meaning the persons interested) "desire to have it sold for himself and his ward, so as to bar any estate or remainder of any of the parties interested," and "give the purchaser a clear and indefeasible title."

These words are almost identical with those to. be found in the ".Price Act;" and although some of the requirements of the act have not been complied with, yet the saving clause in the fifth section, that no error in the proceedings shall prejudice the title acquired by the purchaser, will effectually relieve the proceeding from invalidity. We aver, therefore, that the petition of 1865, for the sale of the minor's interest in the Upper Bern property, and the sale granted in pursuance thereof, was under the Act of 1853, and as this act, by its very provisions, substituted the money for the land, that the decree of the court below is erroneous: Holmes's Appeal, 3 P. F. Smith 339.

*George F. Baer* and *Jefferson Snyder*, for appellee.—As to the real estate sold under the Act of April 3d 1851, there can be no

question about the conversion: Large's Appeal, 4 P. F. Smith 383.

The second sale was not under the "Price Act." It has not been affirmatively shown that it was under said act; there is nothing to justify such a conclusion but the mere inference drawn from the use of terms in the petition.

Mr. Justice GORDON delivered the opinion of the court, March 17th 1879.

About the property embraced in the petition of Mrs. Catharine Wagner, of the 25th of April 1856, there is no controversy. That petition, in its terms, was within the provisions of the Act of 3d of April 1851, hence, the sale under it operated to convert the realty into personalty for all purposes and must be so distributed. The contest is, therefore, confined to the sale by order of the Orphans' Court of the land in Upper Bern township, on the application of Franklin V. Wagner, guardian of Valeria C. Albright.

The only question is, whether the proceedings by which this sale was brought about, were under the Act of 29th of March 1832, or under that of 18th of April 1853. If under the former, there was not only a conversion, but the proceeds must be distributed as personalty; if under the latter, they must be treated for the purposes of distribution as realty. The determination of this question must depend upon the interpretation of the petition itself, for there is nothing else by which to be directed.

That petition sets out the ownership of the land therein described, as having been vested in fee, in Maria Catharine Wagner. It then sets forth her death, leaving as her sole heirs, her mother, Catharine Wagner, Valeria C. Albright, a minor child of a deceased sister, and the petitioner, Frank V. Wagner, a brother. There is thus set forth a life-estate in Mrs. Wagner, with a vested remainder in fee in Miss Albright and Frank V. Wagner, and as all these parties join in the proceedings, the entire estate is represented. This petition further represents, "that the rents, issues and profits of the said real estate are insufficient to keep the same in repair, and be productive to said parties interested, that the buildings are in a state of dilapidation, that it would be much to the interest of the parties interested in said real estate, and to their advantage that the same should be sold." This puts the case directly within the Act of 1832, and had the petition stopped at this point, there would have been no difficulty, but the person who drafted it, for some mysterious reason of his own, saw fit to add the following, viz.: "That your petitioner is desirous that it should be sold for himself and ward, so as to bar any estate or remainder of any of the parties therein, and give the purchaser a clear and indefeasible title, and thereby insure a better price for the same." This clause would, at first sight, bring the proceedings within the purview of

[Wagner's Appeal.]

the Act of 1853, connected, however, as it is with the preceding clause and with the recitation of title, it becomes obvious that the court below properly treated it as mere surplusage.

The act last above mentioned was designed to operate upon certain estates and conditions not found in this petition. It alleges a desire to "bar remainders," but the statute is operative only on *contingent remainders.* The fifth section requires, "that the petition shall set forth an explanation of the title, and of the purpose to bar the entail, defeat the contingent remainder," &c. It cannot be doubted but that the design, in requiring an explanation of the title to be set forth, was in order that the court might judge, *extra* the prayer of the petitioner, whether the case was really and properly within the act. If, however, this be the true rendering of the statute, then the present case is not within the act above mentioned, for the estate mentioned in the petition is unencumbered by entailments, contingent remainders or executory devises. It cannot be doubted but that the joint deed of the parties would vest in their vendee a fee-simple absolute. Such being the case, there is nothing requiring the intervention of the Act of 1853, it is, therefore, out of the question, since no decree could properly have been made under it.

Decree affirmed, appellant to pay the costs.